#24662-a-PER CURIAM
**2008 SD 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JAY DOUGLAS HEINEN,                     Plaintiff and Appellee,

    v.

MELISSA JO HEINEN,                      Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DAVID R. GIENAPP
Judge

\* \* \* \*

CARL F. HABERSTICK of
Fosheim, Haberstick & Hutchinson          Attorneys for plaintiff
Huron, South Dakota                       and appellee.


BEVERLY J. KATZ of
Katz Law Office, Prof., LLC               Attorneys for defendant
Huron, South Dakota                       and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 19, 2008

OPINION FILED 7/9/08

PER CURIAM

[¶1.]        Melissa Heinen appeals the circuit court's award of primary physical custody of her two children to her ex-husband, Jay Heinen, following her relocation to Vermillion from Huron.  Because the record does not demonstrate an abuse of discretion by the circuit court, we affirm.

## FACTS AND PROCEDURE

[¶2.]        Melissa and Jay both resided in Huron.  The couple had two children; N.H., born October 21, 1998; and Z.H., born May 11, 2001.  Melissa and Jay were divorced in 2004.   Based on their agreement, a shared parenting arrangement was adopted under which they shared custody of the children:  visitation rotated, the children resided with Melissa for nine days and then Jay for five days.

[¶3.]        Jay re-married in 2005.  As a result of this marriage, two step-children lived with him.  Additionally, Jay's child from a prior marriage, the half-sister of N.H. and Z.H., also visited frequently.

[¶4.]        Melissa had a series of relationships after the divorce involving at least one broken engagement.  At the time of the hearing, she was again engaged to be married.  She and her fiancé had dated for a while, had broken up, and then got back together.  During that time, Melissa became pregnant and gave birth to a daughter.  Melissa's fiancé was the father of that child although he was not present for the birth:  Melissa was dating another man at the time.

[¶5.]        Following the most recent engagement, Melissa planned to move to Vermillion to live with her fiancé and their child.  Based on this move, she filed a

motion to relocate and requested that she be granted primary physical custody of the children as the current custody plan would not be practicable.[1]

[¶6.] By all accounts both parents loved the children and were bonded with them. They were both involved in the children's activities and education. The children were doing very well in school and had close friends and family in Huron. The circuit court found that: both parents were involved in the children's religious education and attended church with them, although Melissa was more involved than Jay; both were capable of providing for the medical needs of the children; the children were too young to indicate a parental preference; and the attachment to each parent appeared equal. Although Melissa had been the primary caretaker, her role was only slightly more involved than Jay's: the circuit court characterized the difference as "minute."

[¶7.] In reaching its custody decision, the circuit court found "[t]he minor children are bonded with both half sisters, and also their step siblings, however, the Court does not find that the bonding with their new half sister is to the extent presented by the mother's testimony and her testimony to the extent of the bonding is not credible." The court then articulated compelling factors that it found demonstrated the need for a change in custody that involved separation of the children from their maternal half-sister. These factors included findings that the

---

1. The settlement agreement incorporated into the divorce decree provided that "[t]he parties shall reside with said minor children in Beadle County, South Dakota, unless otherwise agreed. Each party shall act in accordance with SDCL 25-4A-17." That statute provides in relevant part: "[i]f an existing custody order or other enforceable agreement does not expressly govern the relocation of the principal residence of a child, a parent who intends to change his or her principal residence shall, provide reasonable written notice . . . to the other legal parent of the child.

children would have approximately the same amount of contact with the half-sister that existed under the prior arrangement; there would remain significant contact under the visitation schedule; there was a difference in age and a "definite difference" in maturity and interests between the children and their maternal half-sister; a separation from the paternal siblings would occur by the move; and it was in the children's best interests to remain in Huron.

[¶8.] The circuit court also relied on additional factors. It found that despite animosity between the parents, "one of the significant reasons the minor children have prospered [was] their stable relationship in the Huron community." It further determined that Melissa had shown a lack of stability in her relationships, including with her present fiancé (now indicated to be her current husband in the briefs), and that Jay and his present wife had demonstrated a more stable home environment. The court finally found that: Jay's present wife had a good relationship with the children and was involved in their care and upbringing; there was no evidence indicating whether Melissa's fiancé would be of assistance and involved in the care and upbringing of the children; and the custody evaluators acknowledged that very little was known about the fiancé's background. Based on all of the foregoing factors, the circuit court awarded primary physical custody to Jay with liberal visitation for Melissa. Melissa appeals.

ISSUE

[¶9.] **Whether the circuit court abused its discretion in changing primary physical custody of the children to Jay.**

[¶10.] The circuit court's and this Court's standards in a custody decision are well settled:

> In deciding custody disputes between parents, "the court shall be guided by consideration of what appears to be for the best interests of the child in respect to the child's temporal and mental and moral welfare." SDCL 25-4-45; Zepeda v. Zepeda, 2001 SD 101, ¶13, 632 NW2d 48 (citing Fuerstenberg v. Fuerstenberg, 1999 SD 35, ¶22, 591 NW2d at 806). On appeal, we review a trial judge's decision for error in incorrectly choosing, interpreting, or applying the law; for clear mistakes in fact findings; and for undue emphasis on matters not materially related to the child's welfare. *Fuerstenberg*, 1999 SD 35, ¶35, 591 NW2d at 810. We expect that any decision will be balanced and methodical. *Id*. In considering the relevant evidence, courts should be cognizant of several "guiding principles." *Id*. ¶23. These include parental fitness, stability, primary caretaker, child's preference, harmful parental misconduct, and separation of siblings. *See generally Fuerstenberg*, 1999 SD 35, ¶¶23-32, 591 NW2d at 806-10.

Arneson v. Arneson, 2003 SD 125, ¶ 13, 670 NW2d 904, 909. Further, "[a] court is not bound to make a specific finding in each category; indeed, certain elements may have no application in some cases, and for other cases there may be additional relevant considerations. In the end, our brightest beacon remains the best interests of the child[ren]." *Zepeda*, 2001 SD 101, ¶ 13, 632 NW2d at 53. Nevertheless, we recognize that custody determinations are not easy decisions, particularly in cases such as this where both parents are loving and bonded with the children.

> It is a poignant reality that when parents contest the custody of their children, a court must make a choice. That choice is often difficult because between two loving parents there may be little to distinguish one over the other. Choosing between two satisfactory options falls within a judge's discretion. Thus, in our review of an ultimate decision on custody, we decide only whether the court abused its discretion. *Fuerstenberg*, 1999 SD 35, ¶22, 591 NW2d at 807 (citations omitted). Although we have repeatedly invoked stock definitions, the term "abuse of discretion" defies an easy description. It is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full

consideration, is arbitrary or unreasonable. *See generally*
Adrian v. McKinnie, 2002 SD 10, ¶10, 639 NW2d 529, 533
(citations omitted). This standard is the most deferential
of appellate review standards, but that does not mean
that a judge's custody decision will remain undisturbed.
Rather, it is a recognition that trial courts are in a better
position to make these difficult choices because the
parents are present in the courtroom and the judge is
better able to assess their capabilities firsthand.

*Arneson*, 2003 SD 125, ¶ 14, 670 NW2d at 910.

[¶11.] Melissa contends that the circuit court abused its discretion by not placing enough importance on her role as the primary caretaker, and by failing to recognize the benefits of keeping the children with their maternal half-sibling and allowing the family unit to form in Vermillion. The circuit court, however, specifically addressed and considered Melissa's role as the primary caretaker; the impact and considerations associated with separating the children from their maternal half-sister; and the advantages and disadvantages of moving the children to Vermillion. Moreover, a review of the circuit court's detailed five-page single spaced memorandum decision, reflects that it addressed all appropriate factors, including a full consideration of the merits of both parents' individual situation and the best interests of the children.

[¶12.] In weighing all appropriate factors, the circuit court indicated that stability was the primary area that it found compelling in this case.[2] The circuit

---

2.    As stated in *Fuerstenberg*, factors to be considered related to stability include:

(1) the relationship and interaction of the child with the
parents, step-parents, siblings and extended families, (2)
the child's adjustment to home, school and community, (3)
the parent with whom the child has formed a closer
attachment, as attachment between parent and child is

court found that Jay presented a more stable family unit, he was able to provide care for the children without necessitating daycare, and the children could remain in the same school without having to break friendships or establish new routines. On the other hand, Melissa had not secured employment in Vermillion, she planned to marry a man that was more of an unknown in the children's lives, and her relationship with him had been unstable. [3] Further, the circuit court noted that in this case there were half-siblings to consider on both sides, and there were compelling reasons to support the separation that would be necessitated under any circumstances by the move to Vermillion. On this record, there is no demonstration that the circuit court made a fundamental error in judgment, reached a decision outside the range of permissible choices, or acted arbitrarily or unreasonably.

[¶13.]     Affirmed.

[¶14.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.

---

an important developmental phenomena and breaking a healthy attachment can cause detriment; and
(4) continuity, because when a child has been in one custodial setting for a long time pursuant to court order or by agreement, a court ought to be reluctant to make a change if only a theoretical or slight advantage for the child might be gained. Otherwise, the child's sense of sustainment and belonging may be unnecessarily impaired.

1999 SD 35, ¶ 26, 591 NW2d at 808 (citations omitted).

3.     The record indicates Melissa's custody evaluator testified he did not interview the fiancé or inquire into his background; whereas Jay's evaluator met with and interviewed Jay and his present wife and undertook a questionnaire designed to see how they functioned together as parents.